IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GARDENIA M. OCASIO-DORADO, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-595 (PTG/IDD) |
| ) | |
| CHRISTINE WORMUTH, Secretary of the ) | |
| Army, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. Dkts. 13, 16. Pursuant to Fed. R. Civ. P. 56, Plaintiff and Defendant both argue that they are entitled to summary judgment as to Plaintiff's claim that the Army Board for Correction of Military Records' denial of Plaintiff's application to have an Officer Evaluation Report ("OER") removed from her official military record was arbitrary and capricious. *See id.* For the reasons that follow, this Court will deny Plaintiff's Motion for Summary Judgment (Dkt. 13) and grant Defendant's Cross-Motion for Summary Judgment (Dkt. 16).

**Legal Standard**

The Secretary of the Army, through the Army Board for Correction of Military Records (hereinafter "ABCMR" or "the Board"), is authorized to correct any Army military record when she "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The ABCMR's decision to deny an Army officer's application is a final agency action that must be in writing. *See* 32 C.F.R. §§ 581.3(g)(1), 581.3(g)(2)(i)(A). The ABCMR "is not an investigative body" and instead, must "decide cases on the evidence of record." *Id.* §

581.3(c)(2)(iii). To that effect, the Board may "[d]eny applications when the alleged error or injustice is not adequately supported by the evidence[.]" *Id.* § 581.3(b)(4)(v). "The applicant has the burden of proving an error or injustice by a preponderance of the evidence." *Id.* § 581.3(e)(2). When the applicant then seeks to have a federal court review the Board's decision, the applicant "has 'the burden of showing by cogent and clearly convincing evidence that the military decision was the product of a material legal error or injustice.'" *Heuss v. Toro*, No. 1:21-cv-662, 2022 WL 598055, at *3 (E.D. Va. Feb. 28, 2022) (quoting *Rotenberg v. Sec'y of Air Force*, 73 F. Supp. 2d 631, 636 (E.D. Va. 1999)).

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56). Generally, to survive a Rule 56 motion for summary judgment, a party must go beyond the pleadings and cite to its own affidavits, depositions, answers to interrogatories, and/or admissions on file to show that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "However, '(i)n a case involving review of a final agency action under the (APA) . . . the standard set forth in Rule 56(c) does not apply because of the limited role of a court reviewing that administrative record.'" *Thompson v. United States*, 119 F. Supp. 3d 462, 467 (E.D. Va. 2015) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006)).

Final determinations made by the ABCMR are "reviewable under the same standards set forth in the Administrative Procedure Act [APA]." *Id.* (citing 35 U.S.C. § 154(b)(4)(A)). The APA establishes that, as a general rule, "agency action, findings, and conclusions" will be set aside only when they are "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law." *Ohio Valley Envt'l Coal., Inc. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing 5 U.S.C. § 706(2)). Review under the arbitrary or capricious standard is highly deferential and agency action is presumed to be valid. *Id.* Challenges to decisions made by military correction boards such as the ABCMR are subject to an "unusually deferential application of the arbitrary or capricious standard of the APA." *Downey v. U.S. Dep't of Army*, 110 F. Supp. 3d 676, 686 (E.D. Va. 2015) (*quoting Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)), *aff'd*, 685 F. App'x 184 (4th Cir. 2017).

In reviewing an agency decision under the APA, "the court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). Nevertheless, the court must perform the "important [] task of reviewing agency action to determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (quotation marks and citations omitted). However, an agency decision will generally be upheld if "the agency has examined the relevant data and provided an explanation of its decision that includes 'a rational connection between the facts found and the choice made.'" *Ohio Valley Envt'l Coal.*, 556 F.3d at 192 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). The explanation "need not be a 'model of analytic precision.'" *Downey*, 685 F. App'x at 190 (quoting *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 350 (4th Cir. 2001)). Rather, the reviewing court "must 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id.* (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). A decision will be upheld if it is supported by "substantial evidence" or "such relevant evidence as a reasonable mind might accept

as adequate to support [the] conclusion." *Platone v. U.S. Dep't of Labor*, 548 F.3d 322, 326 (4th Cir. 2008) (citation omitted).

## Factual and Procedural Background

### A.   Plaintiff's Military Background and Deployment to Iraq

At the time of the events at issue, Gardenia Dorado-Ocasio ("Plaintiff"), was a Captain in the U.S. Army. Administrative Record ("AR") 661. In August 2019, Plaintiff was deployed to Iraq, where she served as the Commanding Officer for the 258th Movement Control Team and was responsible for leading 21 soldiers across six different locations in Iraq. AR 170, 661. *Id.* During her deployment, Plaintiff's rating officer was Lieutenant Colonel Peter Holloway ("LTC Holloway"), and her senior rater was Colonel James Porter ("COL Porter").[1] *Id.*

### B.   Concerns Surrounding Plaintiff's Leadership

In November 2019, the Office of People Analytics released a Defense Organizational Climate Survey Report ("DEOCS Report") that summarized the results of a command climate survey completed by members of Plaintiff's unit. AR 80–122. The DEOCS Report revealed that Plaintiff received low favorability in several response categories, including leadership, organizational processes, inclusion, and discrimination. AR 85–86.

On December 13, 2019, Plaintiff counseled one of the subordinates in her unit, Specialist Sherka Huddleston, after Huddleston attempted to use the Battalion Commander's open-door policy to express concerns about Plaintiff's leadership. AR 125–26. On December 20, 2019, LTC

---

[1] An Army officer will typically have two different rating officials—their immediate supervisor is the "rater," and their second-level supervisor is the "senior rater." *See* Army Reg. 623-3 §§ 2-5(a), 2-7(3).

4

Holloway counseled Plaintiff about "'prohibitions against reprisal or retaliation against Soldiers of [her unit].'" Dkt. 17 ¶ 12.[2]

LTC Holloway also expressed concerns about Plaintiff's interaction with another subordinate, Staff Sergeant Shakeia Dunn ("SSG Dunn"), with whom Plaintiff had prior conflict.[3] On December 30, 2019, Plaintiff emailed LTC Holloway and told him that while she understood that his orders were to "hold off on counseling" SSG Dunn, she would nevertheless "be forced to counsel [SSG Dunn]" if she was "unprofessional, loud, aggressive, demanding or disrespectful towards [Plaintiff's] rank." AR 124. In response, LTC Holloway told Plaintiff that from her email, "it appears that you have already made a decision in regards to SSG Dunn and are considering retaliating against her if she was one of the individual's [sic] that utilized the open door policy or filed a complaint." *Id.* LTC Holloway expressed his concerns about this since, as he reminded Plaintiff, the two had already discussed the "potential consequences of such actions." *Id.*

### C. The AR 15-6 Investigation

Sometime in December 2019, an informal investigation, pursuant to Army Regulation 15-6 (an "AR 15-6 investigation"), was launched against Plaintiff.[4] *See* AR 58–59, 140–42. The AR

---

[2] Plaintiff does not dispute this statement of undisputed fact contained in Defendant's brief. *See* Dkt. 21 at 1 (noting that Paragraphs 1–8, 10–14, 16–26, 28, 30, and 32–64 of Defendant's Statement of Undisputed Material Fact are not in dispute).

[3] In October 2019, Plaintiff counseled SSG Dunn, telling her that she displayed "toxic leadership, unprofessionalism, lack of military bearing, and borderline disrespectful calls and emails." AR 77. Then, sometime in mid-November 2019, civilian contractor Victor Garcia told Plaintiff that SSG Dunn and another officer in Plaintiff's unit, Sergeant Carter, "were publicly displaying inappropriate behavior" while training together. AR 54; *see also* AR 174. Plaintiff reported this allegation to her Battalion Commander, Lieutenant Colonel William Rozar. *Id.*

[4] The parties dispute when and for what reason the AR 15-6 investigation into Plaintiff's behavior began. Defendant argues that the record does not provide a definitive start date of the AR 15-6 investigation. Dkt. 17 at 16. However, Defendant claims that Plaintiff's December 13, 2019 counseling of Specialist Huddleston appears to be what triggered the investigation. *Id.* at 4, n.2. In contrast, Plaintiff asserts that the investigation began on December 25, 2019, after she

5

15-6 investigation covered allegations of Plaintiff's behavior, including allegations of "toxic leadership, [Equal Opportunity] violations, appearances of improper relations, and violations of unit policies." *See* AR 58. During the investigation, Plaintiff was suspended from her command and ordered not to communicate with her prior subordinates. AR 325; *see also* AR 55. As the investigation proceeded, soldiers in Plaintiff's unit provided sworn statements about her behavior and leadership style. *See* AR 293–95, 297–98. Additionally, two soldiers reported in their sworn statements seeing a male officer, Major Joshua Shaver ("Major Shaver"), leaving Plaintiff's room on several occasions, and expressed their belief that Plaintiff and Major Shaver—who are both married—were having an inappropriate romantic relationship. AR 294–95.

1. *Results of the AR 15-6 Investigation*

The AR 15-6 investigation substantiated the allegations made against Plaintiff, including that she displayed toxic and ineffective leadership, engaged in retaliatory behavior against her

---

filed a sexual harassment complaint against the Battalion Command Sergeant Major, Carl Engel ("CSM Engel"). Dkt. 14 ¶ 6.

Plaintiff claims that on December 18, 2019, she filed a sexual harassment complaint against CSM Engel. *Id.* ¶ 4. However, the only evidence in the administrative record that Plaintiff cites in support of this claim is an email from another captain, Marvin Dagin ("CPT Dagin"), and a subsequent sworn statement he provided on June 8, 2020. AR 41–43. In the email, sent on December 18, 2019, CPT Dagin appears to be reaching out to someone from SHARP—the Army's Sexual Harassment/Assault Response Prevention program—after "a fellow Commander" (presumably Plaintiff) "came and cried to [CPT Dagin] about a situation" that Dagin believed needed SHARP's attention. AR 41. In the sworn statement, CPT Dagin stated that Plaintiff came to him and told him that while she was in a hallway, "CSM Engel walked by with a smirk and touched her shoulder." AR 42. CPT Dagin later talked to a SHARP officer about the situation and was told that "the incident was not a SHARP related incident." *Id.*

The record is otherwise devoid of any evidence that Plaintiff ever formally or informally filed a sexual harassment complaint against CSM Engel, to whom she filed this complaint with, or that pertinent individuals, particularly LTC Holloway, were aware that Plaintiff made such a complaint. For this reason, and for the reasons discussed further in this opinion, Plaintiff's claim that the AR 15-6 investigation was initiated for improper or retaliatory reasons lacks support from the administrative record and does not otherwise impact the ultimate resolution of this civil action.

subordinates, and "created the perception of an improper relationship." *See* AR 171. On March 28, 2020, as a result of the investigation, Plaintiff was given a General Officer Memorandum of Reprimand ("GOMOR"). AR 325. On April 23, 2020, Major General John Sullivan reviewed Plaintiff's GOMOR and ordered that it be temporarily placed in her local unit file for 18 months or until Plaintiff was reassigned to another jurisdiction. AR 324. On April 28, 2020, Brigadier General Howard Geck reviewed the AR 15-6 investigation and resulting GOMOR and, thereafter, approved Plaintiff's removal from her position as Company Commander. AR 325.

### D. Plaintiff's Subsequent Interactions with LTC Holloway After the AR 15-6 Investigation

In April 2020, Plaintiff had two counseling sessions with LTC Holloway pertaining to her behavior and the results of the AR 15-6 investigation. *See* AR 58–59. At the end of the first counseling session on April 25, 2020, LTC Holloway warned Plaintiff "not to take any action that could be considered retaliation against SSG Dunn." AR 58. Despite LTC Holloway's directive, that same day, Plaintiff reported SSG Dunn to a SHARP officer for potentially sexually harassing another officer in Plaintiff's unit. *Id.* Plaintiff made this report based on a November 2019 statement made to her by civilian contractor Victor Garcia, although Plaintiff did not disclose to the SHARP officer how she obtained Mr. Garcia's statement.[5] *Id.* Plaintiff later admitted that she "wasn't totally upfront about the investigation" when speaking to SHARP about the statement. AR 49. On April 29, 2020, LTC Holloway counseled Plaintiff for a second time and ordered Plaintiff "to cease retaliatory and reprisal behavior against members" of her unit. AR 59. That same day, following Brigadier General Geck's approval of Plaintiff's removal, LTC Holloway relieved Plaintiff of her command as Company Commander. AR 56.

---

[5] *See* discussion, *supra* note 3.

On May 18, 2020, Plaintiff requested redress from LTC Holloway pursuant to Article 138 of the Uniform Code of Military Justice. AR 199–200. In her request for redress, Plaintiff listed several complaints against LTC Holloway, including: (1) failing to assist her with securing her personal property left in Iraq; (2) denying or ignoring her requests to have open door meetings with him and the Base Commander; (3) discouraging her from using SHARP and retaliating against her for doing so; and (4) accusing LTC Holloway of ordering her to falsify a document during an investigation into lost or missing government property. AR 200–03. Plaintiff requested various forms of relief, including that an investigation be opened into LTC Holloway and that he be removed as her rating official. AR 201–03. On June 3, 2020, COL Porter responded to Plaintiff's request for redress, stating that he would open an investigation into Plaintiff's allegation that LTC Holloway discouraged her from using SHARP or retaliated against her for doing so.[6] AR 205. On June 25, 2020, as part of the investigation, Plaintiff emailed the investigating officer a sworn statement alleging misconduct by LTC Holloway. AR 53, 55–56. On August 31, 2020, COL Porter informed Plaintiff that the investigation into LTC Holloway was completed and her allegations against him were unsubstantiated. AR 213.

E.    **The Contested OER**

On June 29, 2020, LTC Holloway, who remained Plaintiff's immediate supervisor, issued an OER of Plaintiff's military performance for the period of December 20, 2019 to May 11, 2020. AR 170. LTC Holloway submitted the OER as "relief for cause." *Id.* LTC Holloway rated

---

[6] COL Porter rejected Plaintiff's other bases for an investigation into LTC Holloway for various reasons, including, for instance, the fact that an inventory had been conducted of Plaintiff's belongings and all of Plaintiff's belongings were accounted for and shipped to her home. *See* AR 204.

8

Plaintiff's overall performance as "unsatisfactory." *Id.* He recommended that Plaintiff be relieved from command "based upon an AR 15-6 investigation and subsequent GOMOR." *Id.*

On July 21, 2020, Plaintiff wrote a memorandum to COL Porter asking him to review LTC Holloway's rating on her OER. AR 173–75. In her memorandum, Plaintiff expressed her belief that LTC Holloway was retaliating against her because of her earlier complaints against him. AR 173–74. Additionally, Plaintiff listed her disagreements with the AR 15-6 investigation and argued that it was "logically impossible" for the AR 15-6 investigation to find that she engaged in an inappropriate relationship with Major Shaver while a parallel investigation into him did not substantiate any allegations of a romantic relationship between the two of them. *Id.*

On August 19, 2020, Plaintiff submitted a response to LTC Holloway's rating, reiterating her beliefs that the AR 15-6 investigation was faulty. AR 172. Plaintiff further argued that LTC Holloway should not have been able to rate her because he was under investigation due to her May 18, 2020 complaint. *Id.* On August 20, 2020, COL Porter approved the OER but rated Plaintiff as "Qualified" compared to other officers in the same grade. AR 171. COL Porter stated that Plaintiff "is a young officer who was placed in a tough company command[,]" and expressed the belief that Plaintiff "has the potential to do well in a company command with appropriate leadership and oversight." *Id.*

### F. Plaintiff's Appeal and Subsequent ABCMR Application

In December 2020, Plaintiff appealed her OER to the Army Special Review Board. AR 179–90. On April 8, 2021, the Army Special Review Board unanimously voted to deny Plaintiff's appeal, a vote that was subsequently approved by the board's President. AR 705. On July 19, 2021, Plaintiff appealed her case to the ABCMR. AR 24. In her ABCMR application, Plaintiff sought removal of the OER from her Army Military Human Resource Record ("military record")

9

on the basis that: (1) it was factually inaccurate; (2) it contained unproven derogatory information; (3) LTC Holloway was "conflicted" and not objective because he was "under investigation du[e] to complaints" Plaintiff submitted; (4) it did not reflect an assessment of her performance against assigned duties; (5) it incorrectly alleged defects in her character and leadership, and (6) it "unfairly memorialize[d] allegations that were resolved with a locally filed reprimand." AR 24–25.

In considering Plaintiff's application, the ABCMR listed the documents it reviewed that Plaintiff submitted and summarized Plaintiff's arguments in support of her request. AR 3–6. The Board further noted that the Army Special Review Board had determined that "the evidence presented did not establish clearly and convincingly that action was warranted to correct a material error, inaccuracy, or injustice" and that "the overall merits [of Plaintiff's appeal] did not warrant the requested relief." AR 11. The Board found that "[a]fter reviewing the application, all supporting documents, and the evidence found within the applicant's military records," there was "insufficient evidence to support a conclusion that the contested [OER] contains administrative or substantive errors or that it was not prepared in compliance with applicable regulations and policies." AR 12. It further found that Plaintiff had "not shown the evaluations rendered by the rating officials represented anything other than their objective judgment and considered opinions at the time the contested [OER] was prepared or that they exercised faulty judgment in evaluating her as they did." *Id.* The Board ultimately determined that "the overall merits of this case are insufficient as a basis for correction of [Plaintiff's military] records." *Id.* Plaintiff was notified of the ABCMR's decision to deny her application on June 23, 2022. AR 1. Then, on May 3, 2023, Plaintiff filed this instant civil action. Dkt. 1.

## Analysis

I. **Defendant Did Not Violate the APA as the ABCMR's Decision to Deny Plaintiff's Application to Remove the OER from Her Military Record Was Reasonably Explained and Supported by Substantial Evidence**

Plaintiff's APA claim boils down to two assertions: (1) the ABCMR's explanation of its decision to deny Plaintiff's application lacked reasoned analysis; and (2) the decision is not supported by the record evidence. Dkt. 14 at 9, 11. Neither one of Plaintiff's two assertions is meritorious.

As an initial matter, it is important to note that the parties do not dispute the substance of the ABCMR's memorandum opinion. They agree that the Board listed the documents submitted by Plaintiff, summarized all of Plaintiff's arguments, and described in detail some facts contained in Plaintiff's military record as well as the contents of key documents, such as Plaintiff's OER, her complaint against LTC Holloway, and Plaintiff's response to the OER. *See* Dkt. 17 ¶¶ 56–58; *see also* Dkt. 21 at 1 (stating that paragraphs 56–58 of Defendant's Statement of Undisputed Facts are not in dispute). Furthermore, it is undisputed that the written decision contained a brief section titled "Board Discussion" in which the Board stated the following:

> After reviewing the application, all supporting documents, and the evidence found within the applicant's military records, the Board found that relief was not warranted. The applicant's contentions, her military records, and regulatory guidance were carefully considered. The Board found insufficient evidence to support a conclusion that the contested report contains administrative or substantive errors or that it was not prepared in compliance with applicable regulations and policies. Furthermore, the applicant has not shown the evaluations rendered by the rating officials represented anything other than their objective judgment and considered opinions at the time the contested evaluation report was prepared or that they exercised faulty judgment in evaluating her as they did.

AR 11–12. While Plaintiff takes issue with the adequacy of the ABCMR's explanation, contending that the opinion demonstrates that the Board did not engage in reasoned decision-making in denying Plaintiff's application, the Court finds that the ABCMR did all that the law requires it to do in issuing its decision.

This case is analogous to *Downey* where the Fourth Circuit affirmed the district court's grant of the defendant's motion for summary judgment, finding that the ABCMR decision to deny the plaintiff's request to remove a record from his personnel file was not arbitrarily and capriciously made. The Court found that because the Board summarized the plaintiff's arguments and the evidence provided, and restated key factual findings contained in the military record, the Board had adequately considered the plaintiff's claims. *Downey*, 685 F. App'x at 190–91. The Court then concluded that the Board's opinion demonstrated "a rational connection between its factual findings and its conclusion" even though "the Board could have explained its reasons for rejecting [the plaintiff's] claims in more detail and its decision may 'lack ideal clarity[.]'" *Id.* at 191. Here, just as in *Downey*, the ABCMR's opinion begins with a list of the documents that Plaintiff provided the Board along with her application, AR 3; summarizes Plaintiff's arguments in support of her request, AR 3–6; restates factual findings in Plaintiff's military record, AR 6–11; and then reaches the penultimate conclusion that "[t]he evidence presented does not demonstrate the existence of a probable error or injustice[,]" AR 11–12.

From the opinion, it is clear that in denying Plaintiff's application, the ABCMR considered all relevant factors, including Plaintiff's arguments and the evidence in her military record. Yet, Plaintiff contends that the Board should have "compare[d] the evidence and argument presented by [Plaintiff] against the legal standard for correction of a record." Dkt. 14 at 9. However, when an agency's explanation of its decision is "fairly comprehensive" and demonstrates adequate consideration of relevant factors, "[n]othing more is required" of it. *Inova Alexandria Hosp.*, 244 F.3d at 351. Accordingly, the ABCMR provided an adequate explanation of its decision to deny Plaintiff's request, and this explanation is not arbitrary or capricious.

Despite the clear indication that *Downey* is factually on point, Plaintiff maintains the position that this case is distinguishable because there are inconsistences in the actions of certain individuals, namely LTC Holloway, and conflicts of interests in this case that the ABCMR failed to adequately address in its memorandum opinion. *See* Dkt. 21 at 3–4. More specifically, Plaintiff asserts that she presented clear and convincing evidence to the ABCMR[7] demonstrating that (1) in issuing the contested OER, LTC Holloway had a conflict of interest stemming from the investigation into him that was based on Plaintiff's complaint; (2) the standard procedure when a subordinate accuses a commander of misconduct requires the commander to be ordered not to take any action against the subordinate that could look like retaliation; (3) LTC Holloway considered any act Plaintiff took against her subordinates while under investigation to be retaliation; and (4) LTC Holloway did the very thing he "attempted to blame Plaintiff [of] doing to her subordinate (taking adverse administrative action against a subordinate while under investigation caused by the subordinate's complaints)." *Id.* According to Plaintiff, the ABCMR decision fails to offer any explanation for the conflicting result between the investigation into Plaintiff and that of LTC Holloway, and the Board's decision was wrongly made in light of the clear and convincing evidence Plaintiff presented. *Id.* at 4; *see also* Dkt. 14 at 11. This Court is unpersuaded by Plaintiff's arguments.

First, with respect to Plaintiff's assertion that there are inconsistences between how Plaintiff was treated over the course of the AR 15-6 investigation and LTC Holloway's conduct during the course of his investigation, Plaintiff fails to cite to any rule or regulation that provides that LTC Holloway, as Plaintiff's rating officer, could not evaluate Plaintiff's performance and

---

[7] Although Plaintiff's brief in support of her Motion for Summary Judgment references the clear and convincing evidence standard, the correct standard of review before the ABCMR is preponderance of the evidence. 32 C.F.R. § 581.3(e)(2).

13

issue her the contested OER. LTC Holloway was set as Plaintiff's rating officer at the beginning of the rating period in accordance with army regulations. *See* Army Reg. 623-3 § 2-4. Army regulations further dictated that LTC Holloway, as Plaintiff's immediate supervisor, was responsible for directing and assessing Plaintiff's performance. *See id.* § 2-5. Moreover, as Plaintiff's supervisor, LTC Holloway had the authority to issue Plaintiff orders, including the order that Plaintiff stop engaging in any reprisal or retaliatory behavior against her subordinates, the very behavior that was at the heart of and substantiated by the AR 15-6 investigation.[8] The administrative record clearly indicates that Plaintiff disobeyed LTC Holloway's order time and again. *See, e.g.*, AR 58 (discussing the fact that on the same day that LTC Holloway ordered Plaintiff not to take any action that could be considered retaliatory against SSG Dunn, Plaintiff filed a SHARP report against SSG Dunn on behalf of another officer who had not requested that Plaintiff do so).

Additionally, Plaintiff's argument that the OER was made in error because of apparent conflicts of interest on the part of LTC Holloway is flawed for several reasons. First, Plaintiff asserts that LTC Holloway was conflicted in rendering the contested OER because of a previous fraud allegation Plaintiff made against him. Dkt. 14 at 10. In support of this claim, Plaintiff alleges that on February 13, 2020, she reported LTC Holloway to the Army's Criminal Investigation

---

[8] The Court finds that because Plaintiff was under investigation for ineffective and toxic leadership, stemming in part from allegations that Plaintiff retaliated against members of her unit, it was both logical and reasonable for LTC Holloway to order Plaintiff to not take any action that could be considered retaliatory against her subordinates. Despite Plaintiff's assertion to the contrary, this is not a military "standard" that LTC Holloway should have also been subjected to, but was rather a directive that Holloway, as the commanding officer, had the authority to give to Plaintiff. There is no indication that LTC Holloway was given a similar directive by one of his superiors. Accordingly, the Court finds that the ABCMR did not err in not addressing the purported "inconsistencies" that Plaintiff takes issue with.

14

Division ("CID") for "order[ing] her to falsely report equipment as lost." *Id.* ¶ 7. However, the only evidence in the record that supports Plaintiff's claim is an email Plaintiff sent in February 2020 regarding a CID agent's question to Plaintiff about a Financial Liability Investigation of Property Loss ("FLIPL") form Plaintiff submitted. AR 198. In that email, Plaintiff states that she was not allowed to go and "verify the non-expendable shortages that caused the FLIPL" and instead, LTC Holloway ordered Plaintiff to submit the FLIPL. *Id.* Nowhere in that email does Plaintiff accuse LTC Holloway of fraud. Moreover, Plaintiff fails to point to anything in the record—nor does it appear that she presented any evidence to the ABCMR—showing that LTC Holloway either committed or was investigated for fraud, or that he was ever aware of any complaint Plaintiff made about him to CID.

Putting this issue aside, there is a fatal flaw in Plaintiff's argument that the OER was made in error. Before an OER is given to the rated officer, the senior rater must perform a final review of the evaluation report. Army Reg. 623-3 § 2-14(c)(1). When an OER is issued as "Relief for Cause," as is the case here, the senior rater must return the OER to the rating official and indicate if the senior rater finds that the OER contains errors, violates any army procedure or regulation, or is unclear. *Id.* § 2-17(c). Furthermore, in this case, Plaintiff expressly asked COL Porter, whom Plaintiff does not accuse of bias or being conflicted, to review the OER for several "errors." AR 173. There is, however, no indication in the administrative record that COL Porter identified any factual errors with the OER. Ultimately, COL Porter approved the OER and the OER, containing both LTC Holloway and COL Porter's rating, was added to Plaintiff's official military record.

Moreover, the Court finds that Plaintiff did not meet her burden of proving that the contested OER was made in error or was the result of injustice. The ABCMR, in denying Plaintiff's application, explained that it "found insufficient evidence to support a conclusion that

15

the contested report contains administrative or substantive errors." AR 12. The Board also determined that Plaintiff "ha[d] not shown the evaluations rendered by the rating officials represented anything other than their objective judgment and considered opinions at the time the contested evaluation report was prepared or that they exercised faulty judgment in evaluating her as they did." *Id.* This conclusion is supported by substantial evidence in the record.

The record before the Board showed that during the time period in question (December 20, 2019 to May 11, 2020), Plaintiff was the subject of an AR 15-6 investigation and a subsequent GOMOR. Plaintiff did not submit the AR 15-6 investigation file or GOMOR as part of her application. *See* AR 11. Therefore, the Board could not review the documents themselves. Despite this, the Board recounted in detail information contained in the OER, including LTC Holloway's comments that the investigation substantiated allegations that Plaintiff demonstrated "toxic or ineffective leadership behavior" and created "the perception of an inappropriate relationship." AR 8. LTC Holloway's comments are supported by evidence in the administrative record which shows that several officers in Plaintiff's unit complained about Plaintiff's behavior before the AR 15-6 investigation commenced, and two officers provided sworn statements about their belief that Plaintiff was engaging in an inappropriate relationship with Major Shaver. *See* AR 115–20, 294–95. Additionally, the ABCMR considered the various incidents in which LTC Holloway had to counsel Plaintiff about her "pattern of retaliatory and reprisal behavior" against her subordinates; and the record reveals that Plaintiff often ignored this counseling. *See* AR 6, 58–59. Thus, the evidence that was before the ABCMR, and that is now before this Court, supports the conclusion that the OER did not contain any substantive or administrative errors and that it was not issued based on the faulty judgment of Plaintiff's rating officials.

Lastly, the Court finds that the administrative record does not support Plaintiff's assertion that the allegations made against her, which formed the basis of the OER, were unfounded and were the product of retaliation. Plaintiff contends that she was placed under investigation only after she made a sexual harassment complaint against the Battalion Command Sergeant Major, CSM Engel,[9] and that the "driving force" behind allegations surrounding Plaintiff's behavior "was a later debunked inappropriate sexual relationship" with Major Shaver. Dkt. 14 at 10. However, with respect to the sexual harassment claim, the only evidence Plaintiff presented to the ABCMR is an email that Captain Marvin Dagin sent on December 18, 2019 seeking assistance from a SHARP agent. *See* AR 41. That email neither names Plaintiff nor provides details of the alleged sexual harassment incident. Additionally, the email in and of itself is insufficient proof that Plaintiff made a formal compliant of sexual harassment against CSM Engel. Nor does it establish that other individuals, namely LTC Holloway, knew of Plaintiff's alleged sexual harassment complaint against CSM Engel, and therefore retaliated against her because of it. Furthermore, even if it were true that Plaintiff did file a sexual harassment complaint and that it was thereafter that the battalion command team initiated the AR 15-6 investigation, concerns about Plaintiff's behavior and leadership began long before Plaintiff would have filed this complaint, as evidenced by the November 2019 DEOCS Report. Ultimately, the AR 15-6 investigation substantiated claims that Plaintiff engaged in retaliatory behavior against her subordinates and displayed toxic and ineffective leadership, and the AR 15-6 investigation was a legitimate basis for the issuance of the contested OER.[10]

---

[9] *See* discussion, *supra* note 4.

[10] *See* Army Reg. 623-3 § 3-55(c) (contemplating the issuance of a "Relief for Cause" OER "on the basis of an informal AR 15-6 investigation[.]").

17

Next, with respect to Plaintiff's claim that the investigation into Major Shaver debunked the allegation that he and Plaintiff had engaged in an inappropriate relationship, it is undisputed that Plaintiff failed to provide the ABCMR with the file of her AR 15-6 investigation. Furthermore, it does not appear that Plaintiff presented the Board with evidence showing that any claims of an inappropriate sexual relationship between her and Major Shaver had been debunked. The Board, in making its decision, was limited to the evidence Plaintiff provided and factual findings contained in her military record. Among these factual findings was the fact that the AR 15-6 investigation substantiated allegations that Plaintiff created the perception of an inappropriate relationship, not that she actually engaged in one. Accordingly, the record that was before the ABCMR substantiated LTC Holloway's comments and the information contained in the OER.

In sum, the Court finds, as the ABCMR did, that Plaintiff failed to meet her burden of proving that the contested OER was made in error or was the result of injustice and should therefore be removed from her military record. The OER was reviewed and approved by Plaintiff's senior rating official and was based on an AR 15-6 investigation that substantiated allegations concerning Plaintiff's behavior and leadership while a commanding officer deployed in Iraq. The ABCMR adequately explained its decision to deny Plaintiff's application when, in its memorandum opinion, the Board (1) listed the documents Plaintiff submitted, (2) summarized Plaintiff's arguments in support of her application, and (3) detailed key factual findings in Plaintiff's military record before reaching the decision to deny the application. For these reasons, the Court will uphold the ABCMR's decision. Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 13) is **DENIED**; it is further

**ORDERED** that Defendant's Cross Motion for Summary Judgment (Dkt. 16) is **GRANTED**; and it is further

**ORDERED** that judgment be and is entered in favor of Defendant.

The Clerk is **DIRECTED** to enter judgment in favor of Defendant under Fed. R. Civ. P. 58 and to forward copies of this Memorandum Opinion and Order to counsel of record.

\*\*\*

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of the Court within sixty (60) days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

Dated: February 21, 2024
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge

19